James F. JESTER, Appellant,

v.

STATE of Indiana, Appellee.

No. 20S00–8811–CR–941.

Supreme Court of Indiana.

March 21, 1990.

Thomas A. Murto, Murto & Holbrook, Goshen, for appellant.

Linley E. Pearson, Atty. Gen., Jane A. Morrison, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Voluntary Manslaughter, a Class B felony, for which he received a sentence of seventeen (17) years.

The facts are: On the evening of August 3, 1987, appellant was drinking in My Brother's Lounge in Elkhart, Indiana. Richard Nicely, the victim in this case, also was at the lounge and was to begin work as a bouncer at the lounge the following Friday.

During the course of the evening, the victim harassed a number of people in the bar and stated that things would be different once he started as a bouncer. At approximately midnight, when the bar was closing, an argument developed between the victim and appellant. The victim struck appellant, knocked him to the floor, and punched him repeatedly. The fight stopped, and the men returned to the bar where each was given a beer.

A second fight erupted in a few minutes, during which each man received deep cuts on their arms. The victim received a cut across his face and a cut to his arm involving a major artery. During this encounter, the victim uttered the word "quit." He then ran to the back of the tavern; appellant, however, pursued him.

Shortly thereafter, appellant returned to the bar and gave his knife to John Sumner, the bartender. The victim collapsed from loss of blood. The police were summoned. When they arrived at the tavern, appellant was outside and being aided by two friends. The police told him to stay where he was because an ambulance was on the way. During their conversation with appellant, police noticed that he had an empty knife sheath on his belt.

The police stated that blood was "everywhere" inside the tavern. The police found the victim at the back of the tavern lying on the floor covered with blood. When they attempted to aid him, he called them pigs and attempted to strike the officers. When the ambulance arrived, they loaded the victim. The officers had difficulty getting appellant to get into the same ambulance; after a short delay, however, both men were hauled in the same ambulance to the hospital. The victim died of his wounds at approximately 1:29 a.m. on August 5, 1987.

On the 10th day of December 1987, the first jury was sworn and the trial commenced. However, on the 14th day of December 1987, it was discovered that the State had failed to turn over four written statements of witnesses pursuant to a discovery order. During the exchange between the judge and counsel, the judge informed counsel for the defense that he would grant a continuance to afford counsel the opportunity to study the omitted

statements. However, instead of requesting a continuance, counsel filed a motion to dismiss and discharge. The trial judge denied the motion. The defense counsel then moved to suppress the statements.

When the court denied his motion to suppress, counsel stated:

"Your Honor, it puts now the defendant in an intenable [sic] position as set forth in the arguments in evidence of attempting to proceed in the defense of a murder trial, and that he was substantially prejudiced by the actions of the State of Indiana and that on one hand I wish to say, yes, we wish to proceed, but on the other hand I must say to the Court that it's difficult if not impossible to do so because of these new matters, new approach and I really—I honestly have to say to the Court that on the one hand no, on the other hand my God, yes, because of the great constitutional rights of my client."

The court then on its own motion declared a mistrial.

The second trial began on the 11th day of January 1988 and the verdict was rendered on the 20th day of January 1988.

Appellant objected to the second trial on the ground of double jeopardy. Appellant claims the trial court erred in declaring a mistrial on its own motion. Thus, he claims that he was subjected to double jeopardy.

■ A trial court has wide discretion in determining what is to be done when it is discovered there has been a failure to fully respond to discovery orders. *Patel v. State* (1989), Ind., 533 N.E.2d 580; *Carter v. State* (1987), Ind., 512 N.E.2d 158; *Murphy v. State* (1986), Ind., 499 N.E.2d 1077. These cases also hold that a continuance is the usual remedy for the violation of a discovery order. A failure to request a continuance constitutes a waiver of error resulting from the noncompliance with the discovery order.

■ It is clear from this record that although the trial court correctly informed counsel that he was entitled to a continuance, counsel declined to accept such an offer and instead insisted on either a dismissal or a suppression of the statements. Counsel took the position that it would be "impossible" for him to proceed in any other manner. The reality of the situation was that counsel's positions were placing appellant in the position of facing the omitted statements without a continuance to fully evaluate them.

Under the circumstances, it was to the sole benefit of appellant for the trial judge to *sua sponte* declare a mistrial. The trial court's action was not error and under the circumstances was entirely proper to safeguard appellant's interest.

■ As to appellant's claim that to subject him to the second trial constituted double jeopardy, we first would observe that he made no objection to the court's declaration of the mistrial. His failure to object waives the issue. *Lutes v. State* (1980), 272 Ind. 699, 401 N.E.2d 671. Notwithstanding the waiver, the trial judge was in the best position to determine the impact of the State's failure to produce the statements. *White v. State* (1984), Ind., 460 N.E.2d 132. The judge's ruling could work only to the benefit of appellant.

■ Under these circumstances, the trial judge was within his proper discretion to declare the mistrial where it was required by the ends of justice. *Illinois v. Somerville* (1973), 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425. Under the circumstances of this case, we find that double jeopardy did not attach and that the second trial was justified.

■ Appellant contends the trial court erred in granting the State's motion to suppress statements made by appellant to paramedic Gary Wheeler prior to loading appellant into the ambulance. The statements by appellant were: "He's going to cut me and I told him to go for it if he thought he could," and "I didn't [sic] go with him unless he was asleep." Appellant claims that although hearsay, the statements were admissible under the *Patterson* rule because appellant was present in court and available as a witness. However, when appellant testified, he testified

that he had no recollection of such statements; thus he does not come within the *Patterson* rule because having no recollection he was of course not available for cross-examination on that subject. *Watkins v. State* (1983), Ind., 446 N.E.2d 949.

■ Appellant also argues that the statements were admissible as part of the *res gestae* of the event and should be considered as spontaneous utterances. However, the record shows that the statements were made after appellant had time to reflect and were not made for the purpose of explaining what had happened during his encounter with the victim but the statements were made to explain to the paramedic why he would not get in the ambulance with the victim. The statements do not qualify as explanations under the *res gestae* theory. *Riley v. State* (1987), Ind., 506 N.E.2d 476; *Corder v. State* (1984), Ind., 467 N.E.2d 409.

■ Appellant also claims the trial court erred in granting the State's motion to suppress Dr. Vidic's testimony regarding post-traumatic amnesia. At the time of the hearing on the motion to suppress, appellant argued that the testimony was relevant to negate the *mens rea* for the crime. However, in his brief in this appeal, appellant argues that the testimony was relevant to give credibility to his claim that he had no memory of the events following his first encounter with the victim. Appellant may not state one ground for his position at trial and state another ground on appeal, *Daniel v. State* (1988), Ind., 526 N.E.2d 1157; to do so constitutes a waiver of the issue.

■ However, notwithstanding the waiver, appellant relied entirely on self-defense. Therefore, from his point of view, there was no issue on his intent to commit the act. We see no relevance to his loss of memory concerning the second encounter when self-defense is the only issue.

■ Appellant also claims the trial court erred in permitting the prosecutor, during his closing argument, to state: "The defendant's self-claimed amnesia after the first fight. You were not presented with one shred of medical or psychological evidence to support his claim of amnesia, not one shred." Appellant claims the State should not have been permitted to capitalize on its successful blocking of Dr. Vidic's testimony regarding post-traumatic amnesia by pointing out to the jury that they had not heard any such evidence. However, appellant made no objection to the prosecutor's statement above quoted. By failing to object, the issue has been waived. *Carter v. State* (1987), Ind., 505 N.E.2d 798. We see no reversible error in the suppression issues.

■ Appellant claims the trial court erroneously implied to the jury that it could disregard the self-defense issue. He bases this claim on the court's Instruction No. 14, which reads as follows:

"I instruct you that if you consider the issue of self-defense, the burden is upon the State of Indiana to disprove that defense beyond a reasonable doubt. That means that you must be convinced by the evidence, beyond a reasonable doubt, that James Jester did not act in self-defense as defined herein. The State has the burden of proving that James Jester did not act in self-defense with regard to any lesser included offense."

Appellant claims that by use of the phrase, "if you consider the issue of self-defense," the trial court was implying to the jury that they need not consider the issue of self-defense. Even if we would assume that appellant's interpretation of the use of this phrase is correct, the law is that an instruction will not warrant a reversal unless the error is of such a nature that the entire charge misled the jury on the applicable law. *Thomas v. State* (1987), Ind., 510 N.E.2d 651; *Walker v. State* (1986), Ind., 497 N.E.2d 543 and *Grossenbacher v. State* (1984), Ind., 468 N.E.2d 1056.

We further would point out that Instruction 14 was not the only instruction on self-defense given by the trial court. Instruction Nos. 15, 16, and 17 also were on the subject of self-defense. When we read the instructions as a whole, we find that

they correctly and adequately state the law. Therefore, under the authority of the above cases, we find no reversible error in the giving of the instructions on self-defense.

 We also would observe that appellant's claim of self-defense fails in this case because although the victim was the instigator of the altercation, there came a time when he expressed his desire to quit and attempted to flee from appellant who pursued him and did not surrender his knife until the victim was on the floor and bleeding profusely. *See Feliciano v. State* (1985), Ind., 477 N.E.2d 86.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK, JJ., concur.

DeBRULER and DICKSON, JJ., dissent without separate opinion.