Steven **RIED**, Appellant
(Defendant Below),

v.

**STATE** of Indiana, Appellee
(Plaintiff Below).

No. 10A04–9109–CR–300.

Court of Appeals of Indiana,
Fourth District.

March 11, 1993.

Vicki L. Carmichael, Chief Public Defender, Jeffersonville, for appellant.

Linley E. Pearson, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

After his first trial ended in a mistrial, Steven Ried (Ried), 36, was convicted of two counts of child molestation,[1] a class C felony, and found to be a habitual offender. He was sentenced to forty-six (46) years in prison. Ried claims his second trial was barred by double jeopardy, and that the court erred in admitting the testimony of M.H., who claimed she had been molested by Ried, since she had previously recanted those allegations.

We affirm.

### FACTS

On April 2, 1991, during voir dire in Ried's first trial, Clark County Deputy Prosecutor J. Christopher Sturgeon asked the panel of prospective jurors if they or a member of their immediate family had been a victim of a crime. Juror No. 104 (Juror) responded in the affirmative.[2] During Sturgeon's examination of the Juror, it was

---

1. Ind.Code 35–42–4–3(b).

2. Due to the Juror's inaudible responses, we cannot discern the full extent of the information Sturgeon elicited during voir dire.

revealed that the crime was a child molestation; she was satisfied with the outcome of the case; and that the Juror believed that if impaneled, she could base her decision solely on the evidence presented at trial. R. 511–15.

David E. Mosley, Ried's public defender, questioned the Juror about the child molestation case. The Juror disclosed, due to the insistence of Mosley, that her daughter was the victim of the molestation, and that the accused was a *stranger*. When asked whether the Welfare Department was involved in her daughter's case, the Juror responded, *"[n]ot Clark County Welfare Department.... Floyd County."* R. 534–36 (emphasis added). Sturgeon was silent during this interchange and did not interject at any time.

The Juror was impaneled and sworn. After a lunch break, Mosley informed the court that he learned that the Juror was the mother of an alleged victim in a child molestation case that Deputy Prosecutor Sturgeon had prosecuted the week before in the same court—in Clark County. Since that case resulted in an acquittal, Mosley argued that the Juror could not possibly be impartial and requested that the court strike her and replace her with the alternate juror. Sturgeon objected stating that Mosley had questioned the Juror extensively, and it was Mosley's oversight not to question the Juror concerning the outcome of her daughter's case. Sturgeon added that the Juror was forthcoming and that she answered all of defense counsel's questions honestly. R. 644–45. The Court denied the request to strike the Juror.

Ried, by counsel, then requested that, in light of this new information, he be allowed to further voir dire the Juror. The court denied the request. Ried moved for a mistrial on the grounds that a juror was tainted—i.e., the Juror was the mother of an alleged victim in a child molestation case tried the week before. The court denied the motion for a mistrial stating that the jury had been admonished, and that there was no reason to believe the Juror would be more biased than any other juror. Counsel presented opening arguments and one witness testified before the court adjourned for the day.

Upon reconvening the next morning, the court, *sua sponte*, declared a mistrial based on the inaccurate responses contained in the Juror's jury questionnaire. The Juror had four biological children, but had legal custody of only two. She was not the legal guardian of the daughter who was the alleged child molest victim. Nevertheless, the Juror responded "no" to a question on the jury questionnaire inquiring whether anyone in her immediate family had been a witness in a lawsuit. The court stated that whether the Juror answered untruthfully, or had inadvertently supplied misinformation, her answers in the questionnaire did not reflect what the court had learned to be the truth. R. 700.

The State objected to the court's declaration of mistrial, stating that no juror misconduct occurred. Sturgeon reiterated that the Juror truthfully answered all the questions posed to her during voir dire. He added that although the Juror was on his witness list for the previous trial, he had not spoken with, nor had he ever seen the Juror before. Ried did not object to the mistrial.

Ried moved the court to dismiss the case because of prosecutorial misconduct, which was denied. The court found that Sturgeon did not deliberately mislead the court. In Ried's offer of proof in support of his Motion to Dismiss on the grounds of prosecutorial misconduct, Sturgeon testified: he was familiar with the Juror only from her sitting on the present jury; the Juror appeared on his witness list in the molestation case which was tried one week earlier; and the case ended in an acquittal. Sturgeon also stated he did not strike the Juror because he felt she may have been favorable to the prosecution, but he also was concerned about her possible presence on the jury since she stated she was satisfied with the outcome of her daughter's case. When asked whether he had revealed his knowledge of the Juror's identity to the defense, Sturgeon responded, "[n]o, and I felt no obligation to, either." R. 704. At the conclusion of the offer of proof, Ried

withdrew his motion for a mistrial (which had been denied on the previous day) in order to "protect [his] double jeopardy rights." R. 707.

On April 11, 1991, the court conducted a hearing on Ried's Motion to Dismiss on the grounds of double jeopardy. The Juror testified concerning the discrepancies between her answers on the jury questionnaire and during voir dire, i.e., why she replied "no" to questions in the jury questionnaire pertaining to whether she or a member of her immediate family had been a party or a witness in a lawsuit. She explained that since the daughter who was the alleged child molest victim was not her legal daughter, the girl was not part of her immediate family. R. 728. She stated she was not aware that Sturgeon had prosecuted her daughter's molestation charge at the time of Ried's trial or that she appeared on Sturgeon's witness list. She was not notified of her daughter's trial and was never contacted by Sturgeon. The Juror also revealed that her daughter's father was convicted of molesting the daughter four years before the present case.

> Mosley then questioned the Juror.
>
> Mosley: [during voir dire] I asked you a series of questions about the Floyd County Welfare Department.
>
> Juror: Right.
>
> Mosley: Right, and I was also asking you questions about the case that Mr. Sturgeon first asked you whether it was a child molestation case. Do you remember him asking you that question?
>
> Juror: Yes.
>
> \* \* \* \* \* \*
>
> Mosley: Alright. Later on in my questioning, you stated, I've listened to the tape and tell me if you remember, you stated that that case was tried in Floyd County, can you explain what you meant by that?
>
> Juror: Referring to her father. (On voir dire, the Juror stated that the accused was a stranger).
>
> Mosley: Referring to her father's case four years ago?
>
> Juror: Yes.

> Mosley: Wasn't she a witness in that case?
>
> Juror: She was. Well it was on videotape.
>
> \* \* \* \* \* \*
>
> Mosley: Her father would have been a defendant or party in that case if he—if it was against him, correct?
>
> Juror: Right, I guess.
>
> Mosley: Why didn't you bring these facts out to our attention, ma'am?
>
> Juror: I said that my daughter had been molested.
>
> Mosley: Correct. And you said that the case had been tried in Floyd County.
>
> Juror: With her father it was. *I had forgot all about her dealings in this other case.* (which took place in Clark County one week before she was impaneled as a juror).

R. 734–36 (emphasis added).

On April 16, 1992, Ried's second trial began. State's witness, M.H., then 15, testified that Ried had been her stepfather five years earlier. She stated that Ried had molested her from the time she was very young (three, four, or five years old) until she was eleven or twelve years old. The Department of Public Welfare investigated, but dropped the case. Although M.H. had, at one time, recanted her allegation that Ried molested her and accused another man (who had also been her stepfather) of the offense, she stated she had done so because she was afraid that Ried would carry out his threats to kill her mother if she (M.H.) ever told of the molestation.

## DECISION

 Ried maintains he did not consent to a mistrial, nor waive his right to raise his double jeopardy claim. We disagree. The Fifth Amendment and article one, section fourteen of the Indiana Constitution provide that a person shall not be placed in jeopardy twice for the same offense. The protection against double jeopardy will not prevent reprosecution if: 1) a defendant waives his right to raise double jeopardy claims; 2) a defendant consents to the ter-

mination of proceedings after jeopardy has attached; or 3) the termination is required by "manifest necessity." *Whitehead v. State* (1983), Ind.App., 444 N.E.2d 1253, 1254. A defendant waives his right to raise double jeopardy by failing to make a timely objection to the discharge of the jury or to the court's declaration of a mistrial. *Id.; Jester v. State* (1990), Ind., 551 N.E.2d 840, 842. If the defendant moves for or consents to a mistrial, he also forfeits his right to raise double jeopardy in further proceedings, unless the motion was necessitated by governmental conduct "intended to provoke the defendant into moving for a mistrial." *Id.,* citing *Oregon v. Kennedy* (1982), 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416.[3]

█ When the court stated its intentions to declare a mistrial, Ried, by counsel, not only did not object, but stated: "a mistrial is appropriate, but I think I have to protect the double jeopardy rights of my client." R. 694. Later, when Ried's Motion to Dismiss on the grounds of prosecutorial misconduct was denied, Ried withdrew his Motion for Mistrial (which the court denied the day before) in order "to protect [his] double jeopardy rights." R. 707.

█ Regardless of the desired effect of withdrawing the Motion for Mistrial, or intent to preserve a double jeopardy claim, it was necessary that Ried object to either the mistrial or the discharge of the jury in order to preserve his double jeopardy claim. In order to preserve error, an objection must be specific and a basis for the objection not raised in the trial court cannot be raised on appeal. *Brown v. State* (1981), 275 Ind. 441, 417 N.E.2d 333, 336. Clearly, Ried did not object to the court's declaration of a mistrial, and arguably he consented to it. Ried has waived his double jeopardy claim.

█ Even if Ried had preserved his claim, he could not prevail. Despite his argument to the contrary, "manifest necessity" for a mistrial was present, and thus authorizes reprosecution. On appeal, the decision of the trial court will be reversed only for an abuse of discretion, using "manifest necessity" for the jury's discharge as the underlying test. *Phillippe v. State* (1984), Ind.App., 458 N.E.2d 1159, 1161. An explicit finding of "manifest necessity" is not required so long as the record provides sufficient justification for the trial judge's ruling on a mistrial. *Id.,* citing *Arizona v. Washington* (1978), 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717. "The 'manifest necessity' doctrine which authorizes the granting of a mistrial in a criminal cause, and precludes the defendant from successfully raising a double jeopardy challenge to retrial, contemplates a sudden and overwhelming emergency beyond the control of the court ..." *Burton v. State* (1987), Ind.App., 510 N.E.2d 228, 229 *trans. denied.* Manifest necessity cannot be created by errors made by the prose-

---

3. The propriety of the prosecutor's conduct pursuant to Ind.Professional Conduct Rules 3.3, 3.4, and 8.4 notwithstanding, double jeopardy does not attach on the grounds of prosecutorial misconduct. *Whitehead, supra; Manns v. State* (1984), Ind.App., 459 N.E.2d 435, 437; and I.C. 35-41-4-3(b), *infra,* imply that Indiana has adopted the standard for double jeopardy on the grounds of prosecutorial misconduct set forth by the United States Supreme Court in *Oregon.*

The *Oregon* Court narrowed the standard in which double jeopardy may attach from a broad, generalized test of "bad faith conduct or harassment" on the part of the prosecutor to governmental conduct "intended to 'goad' the defendant into moving for a mistrial." *Oregon,* 456 U.S. at 676, 102 S.Ct. at 2089. The Court reasoned that the more general standard of "bad faith conduct" is difficult to apply, and indeed "offer[s] virtually no standards for [its] applica-

tion" since "[e]very act on the part of a rational prosecutor during trial is designed to 'prejudice' the defendant by placing before the judge or jury evidence leading to a finding of his guilt." *Id.* at 674, 102 S.Ct. at 2089.

Although we recognize that we can afford our citizens greater rights under the Indiana constitution, Ried does not urge us to do so. Instead, Ried argues that the prosecutor's conduct falls under the type of conduct *Oregon* proscribes. That simply is not so. If we may discern any intent on the part of the prosecutor, we would speculate that he wished the defendant would never learn of the Juror's background and that he desired to bring the first trial to its completion. Sturgeon admitted that he felt he might have had a tactical advantage to having the Juror on the panel. We do not condone the prosecutor's conduct—we merely point out that it does not fall within the narrow confines of *Oregon.*

cutor or the judge—the error must arise from some source outside their control. *Id.*

In *Corley v. State* (1983), Ind., 455 N.E.2d 945, 950, our supreme court cautioned that a court's power to declare a mistrial based on manifest necessity "ought to be used with great caution, under urgent circumstances, and for plain and obvious causes." In recognizing that a defendant's constitutional protection against double jeopardy "exists only so long as the courts restrict their exercise of the power to extraordinary circumstances," the court noted that I.C. 35–41–4–3 identifies several categories of extraordinary circumstances which would meet the manifest necessity requirement. *Id.* I.C. 35–41–4–3 provides in pertinent part:

**Prosecution barred for the same offense.**

(a) A prosecution is barred if there was a former prosecution of the defendant based on the same facts and for the commission of the same offense and if: (2) The former prosecution was terminated after the jury was impaneled and sworn or, in a trial to the court without a jury, after the first witness was sworn *unless* (i) the defendant consented to the termination or waived, by motion to dismiss or otherwise, his right to object to the termination, (ii) it was physically impossible to proceed with the trial in conformity to the law, (iii) there was a legal defect in the proceedings that would make any judgment entered on the verdict reversible as a matter of law, (iv) prejudicial conduct, in or outside of the courtroom, made it impossible to proceed with the trial without injustice to either the defendant or the state, (v) the jury was unable to reach a verdict, or (vi) *false statements of a juror on voir dire prevented a fair trial.*

(b) If the prosecuting authority brought about any of the circumstances in subdivisions (a)(2)(i) through (a)(2)(vi) of this section, with intent to cause termination of the trial, another prosecution is barred. (Emphasis added).

Dispositive here is the fact that the trial court based its decision to declare a mistrial on the grounds that the Juror had been untruthful with the court. The Juror misstated the truth on her jury questionnaire and mislead the court during voir dire regarding the county in which her daughter's charge was prosecuted. This contingency is addressed in our statute and, as noted above in *Corley*, the statute enumerates several extraordinary circumstances which constitute manifest necessity. However, Ried continues to maintain that manifest necessity did not warrant a mistrial because: 1) the Juror testified that she was not biased; 2) even if the Juror were biased, the court should have implemented a less drastic measure and replaced her with the alternate juror; and 3) the Juror's presence on the jury was the result of prosecutorial error within Sturgeon's control.

■ First, given a juror who misstated the truth on her jury questionnaire and during voir dire, the court had no reason to believe the Juror when she stated that she could base her decision solely on the evidence presented in the instant case. Second, Ried provides no Indiana authority for the proposition that "when there is an alternate juror available and only one juror tainted, a mistrial is not manifestly necessary." Appellant's brief at 31. Quite to the contrary, our double jeopardy statute provides that a court may discharge the jury without jeopardy attaching in the event a juror's false statements during voir dire prevents a fair trial. As for Ried's third point, during voir dire Ried elicited that the Juror's daughter was the alleged victim of a child molestation. Although Sturgeon failed to disclose the details of the daughter's case to the court or correct the misunderstanding that the daughter's case was not associated with Clark County, the Juror's bias, if any, stemmed from the fact that the Juror's daughter was the alleged victim of a molestation. Ried was aware of the background of the Juror.[4]

**4.** As previously noted, Sturgeon asked the prospective jurors whether they or a member of their immediate family had been a victim of a crime. To this, the Juror responded in the affirmative. Thus, the prosecutor elicited that either the Juror or a member of her immediate

Ried could have struck her from the jury panel. He did not. Thus, the Juror's presence on the jury was not solely due to prosecutorial error within Sturgeon's control. The trial court properly exercised its discretion. Manifest necessity was present.

■ Next, Ried claims the trial court erred by allowing M.H. to testify that Ried molested her in the past because M.H. had, at one time, recanted those allegations. Ried contends M.H.'s prior recantation makes her trial testimony inadmissible under the depraved sexual instinct exception. Ried's Motion in Limine regarding M.H.'s testimony was denied at Ried's first trial. Ried renewed this motion at the second trial, and the court incorporated its previous rulings into the record. R. 827, 840. However, Ried did not object to M.H.'s testimony at trial.

■ In *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, our supreme court abandoned Indiana's depraved sexual instinct exception and adopted Federal Rule of Evidence 404(b) in its entirety. In *Pirnat v. State* (1993), Ind., 607 N.E.2d 973 (*Pirnat II*), our supreme court stated that the ruling in *Lannan* would apply to "Pirnat and others whose cases *properly preserved* the issue and whose cases were pending on direct appeal at the time *Lannan* was decided" (emphasis added). To preserve error in the denial of a pretrial motion in limine, a party must object to the admission of the evidence at the time it is offered at trial. *Waters v. State* (1981) Ind., 415 N.E.2d 711, 713 *rev'd on other grounds by* 574 N.E.2d 911. Since Ried did not object to M.H.'s testimony at trial, he failed to preserve error and has waived this issue for review.

■ In concluding that Ried has waived review, it is important to note the difference between trial error and fundamental error. To rise to the level of fundamental error, error must constitute a clearly blatant violation of basic and elementary

principles, and the harm or potential for harm must must be substantial and appear clearly and prospectively. *Reynolds v. State* (1989), Ind.App., 536 N.E.2d 541, 543 *trans. denied.* Fundamental error is the exception to the general rule requiring objection to be made at trial to preserve error for appeal; to fall within this exception, error must be such that if not rectified it would deny the defendant fundamental due process. *Olson v. State* (1990), Ind., 563 N.E.2d 565, 567. Obviously, if the admission of evidence demonstrating a depraved sexual instinct were fundamental error, the *Pirnat* court would not require that the issue be properly preserved. In order to review a claim of trial error, as is now before us, the defendant must make a timely and specific objection. Ried did not.

Affirmed.

CHEZEM, J., concurs.

BARTEAU, J., dissents with separate opinion.

BARTEAU, Judge, dissenting.

I respectfully dissent. In *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, our supreme court abandoned the "depraved sexual instinct" exception to the admission of uncharged crimes and criminal conduct in favor of the policy espoused in Federal Rule of Evidence 404(B). Because the supreme court did not provide that *Lannan* would operate only prospectively, its holding is applicable to, at a minimum, all cases pending on direct appeal where the issue is properly preserved. *Pirnat v. State* (1993), Ind., 607 N.E.2d 973 (opinion on rehearing) (*Pirnat II*); *Pirnat v. State* (1992), Ind., 600 N.E.2d 1342 (*Pirnat I*); *Sink v. State* (1993), Ind.App., 605 N.E.2d 270; *Vanover v. State* (1992), Ind.App., 605 N.E.2d 218; *Moran v. State* (1992), Ind. App., 604 N.E.2d 1258.

The case before us was pending on direct appeal at the time *Lannan* was decided, but here no objection was made at trial to the presentation of the "depraved sexual

family had been a child molestation victim. Due to the Juror's inaudible responses to several

questions, we can determine no more.

instinct" testimony. The majority takes the position that defense counsel's failure to object to the "depraved sexual instinct" testimony operates as a waiver of that issue on appeal, citing *Pirnat II*. *Pirnat II* provides that "Pirnat and others whose cases properly preserved the issue and whose cases were pending on direct appeal at the time *Lannan* was decided" receive the benefit of *Lannan*. While the language in *Pirnat II* specifically grants review in cases where the issue is preserved and the case is pending on direct appeal, it does not specifically mandate that *Lannan* is inapplicable, or that a finding of waiver is required, in cases pending on direct appeal where the issue is not preserved. Waiver is the intentional or voluntary relinquishment of a known right. Because the right to not be faced with evidence of uncharged molestations did not exist at the time of defendant's trial, failure to object to that testimony cannot be considered an intentional or voluntary relinquishment of a known right.[1]

Any law of evidence is subject to review, even one which has been firmly entrenched for decades. If, as the majority posits, an objection is required to preserve review in the event a change is implemented prior to the case becoming final, then it would be incumbent upon a defense attorney to object to each and every bit of evidence offered by the prosecutor in order to provide effective advocacy and to protect a client's interest lest the evidentiary rule relied upon be altered prior to the case becoming final. If we require defense attorneys to practice precognitive objecting, then it is only fair to hold prosecutors to the same standard and require them to refrain from presenting evidence which might be deemed objectionable before conclusion of the direct appeal. Likewise, judges should

be found in error for not anticipating the actions of higher courts.

"[O]nce a new rule is applied to the defendant in the case announcing the rule, even-handed justice requires that it be applied retroactively to all who are similarly situated." *Teague v. Lane* (1989), 489 U.S. 288, 300, 109 S.Ct. 1060, 1069–1070, 103 L.Ed.2d 334. Whether a defendant is "similarly situated" is a matter of fundamental fairness. As such, each defendant whose case is not yet final or is pending on direct review should have his or her case evaluated to determine whether fundamental fairness requires application of the *Lannan* rule. If the impermissibly tainted evidence was such a central part of the case against the defendant that we could not say with a certainty that the jury would have returned a guilty verdict with or without this evidence, then retroactive application of the new rule is appropriate. *Rowley v. State* (1985), Ind., 483 N.E.2d 1078. *See also Strong v. State* (1982), Ind., 435 N.E.2d 969 (Pivarnik, J., dissenting).

A review of the record in this case convinces me that the "depraved sexual instinct" testimony of M.H. was such a significant part of the evidence that we cannot say the integrity of the jury verdict was not undermined by its admission. As with many child molest cases, there was no direct evidence that a molestation had occurred other than the victim's testimony. Instead, the prosecution's case consisted of the testimony of the victim, bolstered by the testimony of several others repeating the victim's allegations (a practice curtailed by *Modesitt v. State* (1991), Ind., 578 N.E.2d 649), and the "depraved sexual instinct" testimony of M.H. that defendant had molested her when she was his stepdaughter. It is impossible to say that, in a contest of credibility between two people, evidence of a previous molestation would

---

**1.** It also seems incongruous that in civil cases of a like nature a precognitive objection is often not required. *See Farm Bureau Ins. Co. v. Crabtree* (1984), Ind.App., 467 N.E.2d 1220 (even though no objection was made to punitive damages instruction, the issue was remanded for retrial because the case was being tried on the day the supreme court issued the opinion changing the standard of proof for punitive damages);

*Farm Bureau Mut. Ins. Co. v. Dercach* (1983), Ind.App., 450 N.E.2d 537 (no objection to punitive damages instruction but nevertheless ordered a new trial on the issue because the opinion changing the standard of proof was issued while the case was pending on direct review). Surely the liberty interest inherent in criminal cases is more worthy of protection than the pecuniary interest involved in a civil case.

not be significantly weighted by a fact-finder. Thus, because defendant's case was pending on direct review at the time *Lannan* was decided, fundamental fairness requires that the rule announced therein be applied retroactively to defendant's case.

For the above reasons, I would reverse and remand for a new trial.