Ignacio **MOLINA, Appellant–Defendant Below,**

v.

**STATE of Indiana, Appellee–Plaintiff Below.**

No. 17A03–9209–CR–00274.

Court of Appeals of Indiana, Third District.

Sept. 30, 1993.

---

Linda M. Wagoner, Fort Wayne, for appellant.

Pamela Carter, Atty. Gen., Suzann Weber Lupton, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Ignacio Molina appeals his convictions of conspiracy to commit murder, a felony,[1] and conspiracy to commit arson, a class C felony.[2] He presents seven issues for our review:

 I. Whether the trial court erroneously denied Molina's request for an interpreter.

 II. Whether the testimony of a witness for the State was improperly buttressed.

 III. Whether the trial court erroneously admitted into evidence photographs depicting damage caused by explosives.

 IV. Whether the trial court erroneously denied Molina's motion for a mistrial after an outburst by the victim.

 V. Whether the trial court erroneously admitted hearsay statements made by Molina.

 VI. Whether the trial court improperly instructed the jury on the defense of abandonment.

VII. Whether there is sufficient evidence having probative value to support Molina's conviction of conspiracy to commit murder.

We affirm.

The evidence most favorable to the verdicts discloses the following events. In conversations with his co-workers, Molina openly spoke of his dislike for his sister-in-law, Colleen Molina (hereinafter "Colleen"). Molina apparently blamed Colleen for the loss of his inheritance and the breakup of his marriage. On one occasion, Molina asked co-worker Tim Eddingfield, a former military munitions expert, about "blowing something up." Record, p. 1338–39. A few days later, Molina inquired of Eddingfield: "What would you use to blow somebody up?" and indicated that he wanted to "take somebody out." Record, p. 1342.

Subsequently, Molina asked Eddingfield whether he knew a "hit man." Molina claimed that he would pay $5,000.00 for a "hit." Eddingfield contacted the Bureau of Alcohol, Tobacco and Firearms; Agent John Massey contacted Molina posing as a "hit man" who was acquainted with Eddingfield.

Molina and Massey arranged a meeting at which Molina drove Massey past Colleen's residence. The pair also engaged in multiple telephone conversations, which were tape recorded. Molina disclosed his plan that Massey would burn one of Molina's buildings to permit the collection of insurance funds. From the insurance funds, Molina would pay Massey to kill Colleen. Molina provided Massey with a photograph of Colleen; he also provided information about Colleen's workplace, work schedule and vehicle.

Molina was convicted of conspiracy to commit murder and conspiracy to commit arson.

I.

*Request for Interpreter*

At a pre-trial competency hearing, Molina (a native of Mexico) requested the appointment of a Spanish speaking interpreter. Molina challenges the denial of this request.

▮ An indigent defendant who cannot speak or understand English has a right to have his proceedings simultaneously translated to permit his effective participation. *Martinez Chavez v. State* (1989), Ind., 534 N.E.2d 731, 736, *reh. denied* (citing *United*

---

1. IND.CODE 35–41–5–2(a); IND.CODE 35–42–1–1(1).

2. I.C. 35–41–5–2(a); IND.CODE 35–43–1–1(c).

*States ex rel. Negron v. State of New York* (2d Cir.1970), 434 F.2d 386). An interpreter enables a non–English speaking defendant to understand the trial, provides a means of communication between the defendant and his attorney, and translates the defendant's testimony if he testifies. *Id.* at 737.

Here, however, the court was not confronted with a request for an interpreter made by a non–English speaking defendant. Molina demonstrated his ability to speak and comprehend English at the initial hearing and pre-trial hearing. Speaking in English, Molina indicated that he understood the charges against him, the advisement of his rights, and the possible penalties. During testimony as to his financial condition, Molina displayed an ability to understand concepts such as "retirement plan," "mortgage" and "equity."

■ At the pre-trial competency hearing, Molina indicated that he had lived in the United States thirty-three years. He further indicated that he had been employed at County Line Cheese seventeen years and had received no on-the-job instruction in Spanish. He also owned and managed various rental properties in Garrett, Indiana. In sum, Molina's testimony disclosed that he was able to live and work in an English-speaking environment without interpretive assistance.

Moreover, Molina has not alleged that there were portions of the trial not understood by him or that he was unable to communicate with and assist his attorney, resulting in prejudice to him. *See Valle v. State* (1990), Ind., 550 N.E.2d 746, *reh. denied.*

## II.

### *Bolstering of Witness Testimony*

Next, Molina contends that the State was improperly permitted to bolster the testimony of Agent Massey because Massey read verbatim from a transcript of his and Molina's recorded conversations before the tapes were admitted into evidence. Molina argues that the jury was subjected to "endless repetition" of the same evidence in contravention of *Modesitt v. State* (1991), Ind., 578 N.E.2d 649.

■ Our review of the record discloses that Massey merely used transcripts of the recorded conversations to refresh his memory. He did not read verbatim from the transcripts; rather, he responded to the direct examination questions propounded to him in reliance upon his own (refreshed) recollection. Record, pp. 1512–15. Massey's testimony was not *improperly* bolstered, inasmuch as use of materials to refresh a witness' recollection is permissible where the memorandum is not substituted for the memory of the witness. *Wilson v. State* (1987), Ind., 511 N.E.2d 1014, 1018.

Moreover, we conclude that the *Modesitt* decision is distinguishable from the circumstances of Massey's testimony. *Modesitt* involved the "drum-beat repetition" of witnesses relating what each witness had been told by a child molestation victim. These witnesses improperly bolstered the testimony of another witness, resulting in prejudice to the defendant. Here, Massey testified to his first-hand knowledge of the conversations that transpired between himself and Molina. His testimony was not bolstered by that of other witnesses.

## III.

### *Photographs of Explosives' Damage*

At trial, the State offered into evidence (over Molina's objection) photographs of a vehicle before and after C–4 plastic explosives were detonated underneath the vehicle. Molina argues that these photographs were not probative of any issue at trial because he did not specifically direct Massey to accomplish Colleen's demise by the use of explosives.

■ The admission of photographs into evidence is within the trial court's discretion and will not be disturbed absent an abuse of that discretion. *Evans v. State* (1990), Ind., 563 N.E.2d 1251, 1263, *reh. denied.* An abuse of discretion will be found only where the tendency to inflame the jury clearly outweighs the relevance of

the photographs. *Williams v. State* (1990), Ind., 555 N.E.2d 133, 138.

 Massey testified that he and Molina discussed killing Colleen by "blowing up" her vehicle and that Molina provided information concerning the vehicle typically used by Colleen. During the course of their dealings, Massey displayed to Molina C–4 plastic explosives which could be used to accomplish the "hit" of Colleen. The photographs at issue illustrated to the jury the damage which could result from these explosives. The factfinder may learn from the viewing of photographs what otherwise may have been learned through testimony. *Perigo v. State* (1989), Ind., 541 N.E.2d 936, 939–40.

The relevance of the challenged photographs outweighed their prejudicial impact; no abuse of discretion in their admission has been demonstrated.

## IV.

### *Mistrial*

During the course of the trial, Colleen cried out "Nacho, how can you do this to all of us?" Record, p. 1586. Molina contends that he was entitled to a mistrial because of this outburst.

 The trial court has discretion in determining whether to grant a mistrial, and this decision is afforded great deference on appeal because the trial court is in the best position to gauge the surrounding circumstances of the event and its impact on the jury. *Schlomer v. State* (1991), Ind., 580 N.E.2d 950, 955. To prevail on appeal, appellant must show that he was so prejudiced that he was placed in a position of grave peril to which he should not have been subjected. *Id.* However, mistrial is an extreme remedy in a criminal case which should be granted only when nothing else can rectify the situation. *Id.*

 In the instant case, the trial court immediately restored order to the courtroom and admonished the jury to disregard the outburst. Record, pp. 1586–87. A prompt admonishment is presumed to cure any prejudicial impact from a victim out-burst. *Huffman v. State* (1989), Ind., 543 N.E.2d 360, 376, *reh. denied* (overruled in part on other grounds).

We conclude that Molina was not placed in a position of grave peril entitling him to a mistrial.

## V.

### *Hearsay Statements*

Molina next complains that his co-workers Eddingfield and Gehrig were improperly permitted to testify that Molina expressed his dislike for Colleen during conversations at their workplace.

 At trial, Molina objected that these statements were hearsay. He now argues that the statements were so remote in time to the charged crimes that their prejudicial effect outweighs their probative value. An appellant may not state one ground for his position at trial and advance another on appeal; to do so constitutes a waiver of the issue. *Jester v. State* (1990), Ind., 551 N.E.2d 840, 843.

## VI.

### *Abandonment Instruction*

Molina next contends that the trial court gave the jury an instruction on the defense of abandonment which misstated the law. The following instruction was given:

> "It is a defense that the person who engaged in the prohibited conduct voluntarily abandoned his effort to commit the underlying crime and voluntarily prevented its commission."

Record, p. 160.

 Molina failed to object to the foregoing instruction and has therefore waived the issue for appellate review. *Jester, supra,* at 843. Notwithstanding the waiver, we conclude that Molina has failed to demonstrate reversible error in the use of the challenged instruction. An instruction will not warrant reversal unless the error is of such a nature that the entire charge misled the jury on the applicable law. *Id.* The instruction here at issue

recites (almost verbatim) the language of IND.CODE 35–41–3–10, which sets forth the defense of abandonment. The jury was not misled thereby.

## VII.

### *Sufficiency of the Evidence*

Finally, Molina challenges the sufficiency of the evidence in support of his conviction for conspiracy to commit murder. Molina contends that he ultimately "hedged" on his plan to kill Colleen, choosing instead to focus on the collection of insurance monies from the destruction of his home.

To convict Molina of conspiracy to commit murder, the State was required to prove the existence of an agreement to kill and the commission of one overt act in furtherance of that goal. I.C. 35–41–5–2.

Our test for sufficiency of the evidence requires that we neither weigh the evidence nor resolve questions of credibility. We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the verdict. *Jones v. State* (1992), Ind., 589 N.E.2d 241, 242.

Here, the tape recorded conversations between Massey and Molina disclose the existence of an agreement to kill Colleen. Massey testified that Molina gave Massey $100.00, a photograph of Colleen and information regarding Colleen's work schedule and vehicle. Furthermore, Molina drove Massey past Colleen's residence to apprise Massey of the location. There is sufficient evidence of the agreement to kill Colleen and the commission of an overt act in furtherance of the agreement.

Affirmed.

HOFFMAN and FRIEDLANDER, JJ., concur.