**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 20 2014, 9:03 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL R. FISHER**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

COURTNEY SMITH,                    )
                                   )
    Appellant-Defendant,           )
                                   )
        vs.                  )     No. 49A04-1310-CR-500
                                   )
STATE OF INDIANA,                  )
                                   )
    Appellee-Plaintiff.            )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark Stoner, Judge
Cause No. 49G06-1207-MR-45336

**May 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

Appellant-Defendant Courtney Smith appeals his conviction and sixty-year sentence for murder. On June 26, 2012, Smith encountered his stepdaughter's boyfriend, Daesean Shanklin, inside Smith's home, and a confrontation ensued. Shanklin jumped out of a second story window, ran into an alley behind the home, and hid. Smith armed himself with a submachine gun and pursued Shanklin into the alley. There, Smith and Shanklin exchanged gunfire: Smith was wounded; Shanklin was killed. Smith argues that (1) Appellee-Plaintiff the State of Indiana presented insufficient evidence to rebut his claim of self-defense; (2) the State committed prosecutorial misconduct by commenting on his right against self-incrimination; and (3) his sixty-year sentence is inappropriate in light of the nature of his offense and his character. We affirm the judgment of the trial court.

**FACTS AND PROCEDURAL HISTORY**

At approximately 10:30 p.m. on June 25, 2012, sixteen-year-old Shanklin was dropped off at his girlfriend Patricia's home at 2968 N. Arsenal Avenue in Indianapolis. Patricia's stepfather, Smith, also lived at the home, but Smith and Shanklin did not know each other. At approximately 8:30 a.m. the following morning, a confrontation occurred between Smith and Shanklin inside the home. During the confrontation, Shanklin fired one shot from a .22 caliber semiautomatic handgun in a second floor bedroom closet. He then jumped out of the closet window and ran into an alley behind the home. There, Shanklin hid in a narrow gap between a neighboring home's garage and an adjacent fence.

Smith entered the alley approximately ninety seconds after Shanklin, armed with a 10 millimeter submachine gun. At that time, Joseph Howell was repairing an air

2

conditioner in the alley, and Smith asked Howell if he had seen anyone walk by.  Howell replied that he had not.  Seconds later, Smith looked toward the gap where Shanklin was hiding and stated, "'There he is.'"  Tr. p. 39.  Smith then fired his weapon into the gap.  Shanklin fired two shots from the gap, striking Smith twice, and then climbed over the fence and into the backyard of a neighboring home.  Smith continued to fire his weapon over and through the fence for approximately thirteen seconds.  In total, Smith fired twenty-three shots.  Five of Smith's shots struck Shanklin, and two additional shots struck the backpack he was wearing.  After the shooting, Smith returned to his home.

At approximately 9:00 a.m., police found Shanklin lying in critical condition in the yard behind the fence.  Shanklin was transported to Methodist Hospital, where he ultimately died from his wounds.  Police later found Smith suffering from gunshot wounds inside his home.  Smith was transported to Methodist Hospital and recovered.

On July 3, 2012, the State charged Smith with murder.  Smith's two-day jury trial commenced on September 9, 2013, during which Smith argued that he shot Shanklin in self-defense after encountering Shanklin stealing electronics from his home.[1]  Smith did not testify at trial.  For its part, the State presented surveillance video from a liquor store behind Smith's home showing Smith's pursuit of Shanklin into the alley and the shooting that followed.  The jury found Smith guilty as charged.  On September 24, 2013, the trial court sentenced Smith to sixty years of imprisonment.  Where necessary, additional facts will be provided below.

---

[1] From Shanklin's backback, police recovered a Sony Playstation, a Nintendo Wii, and associated items belonging to members of Smith's family.

## DISCUSSION AND DECISION

### I. Whether the State Presented Sufficient Evidence to Rebut Smith's Claim of Self-Defense

Smith argues that the State presented insufficient evidence to rebut his claim of self-defense. A valid claim of self-defense is a legal justification for an otherwise criminal act. Ind. Code § 35-41-3-2; *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002).

> In order to prevail on such a claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *McEwen v. State*, 695 N.E.2d 79, 90 (Ind. 1998). When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. *Id.*

*Wilson*, 770 N.E.2d at 800.

The State contends it presented sufficient evidence at trial that Smith was either the aggressor or a mutual combatant in the alley shooting. "An initial aggressor or a mutual combatant, whether or not the initial aggressor, must withdraw from the encounter and communicate the intent to do so to the other person before he may claim self-defense." *Tharpe v. State*, 955 N.E.2d 836, 844 (Ind. Ct. App. 2011). "[A] defendant's claim of self-defense lacks merit where the original aggressor has retreated, but the defendant pursues him with force, to the aggressor's ultimate demise." *Geralds v. State*, 647 N.E.2d 369, 373 n.7 (Ind. Ct. App. 1995) (citing *Jester v. State*, 551 N.E.2d 840, 844 (Ind. 1990)). *Accord Hollowell v. State*, 707 N.E.2d 1014, 1021 (Ind. Ct. App. 1999).

> The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Sanders v. State*, 704 N.E.2d 119, 123 (Ind. 1999). We neither reweigh the evidence nor judge the credibility of witnesses. *Id.* If there is sufficient evidence of probative value to support the conclusion of

4

the trier of fact, then the verdict will not be disturbed. *Id.*
*Wilson*, 770 N.E.2d at 801.

Here, the record reveals that Shanklin retreated after his confrontation with Smith inside Smith's home. Shanklin jumped out of a second story window, ran into the alley behind the home, and hid. Meanwhile, Smith armed himself with a submachine gun and pursued Shanklin into the alley. There, Smith and Shanklin exchanged gunfire, resulting in Shanklin's death. From this evidence, the jury could reasonably find that Smith was the aggressor or, at least, a mutual combatant in the alley shooting. *See Jester*, 551 N.E.2d at 844; *Hollowell*, 707 N.E.2d at 1021. We therefore conclude that the State presented sufficient evidence to rebut Smith's claim of self-defense.

## II.  Whether the State Committed Prosecutorial Misconduct by Commenting on Smith's Right Against Self-Incrimination

Smith argues that the State committed prosecutorial misconduct by commenting on his right against self-incrimination. Specifically, Smith challenges the following comments made by the prosecutor during the State's opening statement:  "What happened upstairs in that house we will never know. Daesean isn't able to tell you. And it's up to the Defendant if he will testify or not. He doesn't have to testify. But either way, those are the only two people that were up there." Tr. p. 404.

Smith acknowledges that he waived this argument for appeal by failing to contemporaneously request an admonishment or move for a mistrial. *See generally Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). "Where a claim of prosecutorial misconduct has not been properly preserved, our standard for review is different from that of a properly

5

preserved claim. More specifically, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error." *Id.*

We conclude that the prosecutor's comments were improper. "The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence." *Moore v. State*, 669 N.E.2d 733, 739 (Ind. 1996). Here, the prosecutor highlighted Smith as the only person who could provide details concerning Smith's confrontation with Shanklin inside Smith's home, indicated to the jury that it would never learn those details, and explicitly referenced Smith's discretion in whether he would testify or not. The jury reasonably could have interpreted these comments as an invitation to draw an adverse inference from Smith's silence. *See Owens v. State*, 937 N.E.2d 880, 892 (Ind. Ct. App. 2010).

Despite the impropriety of the prosecutor's comments, however, we conclude they did not constitute fundamental error. "Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. It is error that makes 'a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process … present[ing] an undeniable and substantial potential for harm.'" *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006) (quoting *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002)) (alterations in original).

Here, the prosecutor's comments were made with regard to the unknown details of Smith and Shanklin's confrontation inside Smith's home. As explained above, the State sufficiently rebutted Smith's claim of self-defense with evidence of Smith's and Shanklin's

6

actions after that confrontation.  Moreover, the trial court instructed the jury prior to deliberations that Smith's failure to testify "raises no presumption of any kind against him [and] shall not be commented upon, referred to, or in any manner considered by the jury in determining the guilt or innocence of the defendant."  Appellant's App. p. 119.  The prosecutor's comments did not make a fair trial impossible.

### III.  Whether Smith's Sentence Is Inappropriate in Light of the Nature of His Offense and His Character

Smith argues that his sixty-year sentence is inappropriate in light of the nature of his offense and his character.  Indiana Appellate Rule 7(B) provides that this court may revise a statutorily authorized sentence if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  The appropriateness of a sentence "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case."  *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008).  In evaluating the appropriateness of a sentence, the issue is not whether a different sentence would be more appropriate but whether the sentence imposed is inappropriate.  *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007).  The defendant bears the burden of persuading us that his sentence is inappropriate.  *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).  We are not persuaded.

With regard to the nature of Smith's offense, the record reveals that Smith armed himself with a submachine gun, went searching for a sixteen-year-old boy in hiding, and, upon finding him, fired twenty-three shots at the boy, killing him.  With regard to Smith's

7

character, the record reveals Smith to have an extensive criminal history. Smith has been arrested thirty-three times as an adult, resulting in four felony and eight misdemeanor convictions. These include two convictions for carrying a handgun without a license. Additionally, while serving varying sentences for his convictions, Smith has violated the terms of his placement and probation nine times, collectively. Considering Smith's forceful pursuit of Shanklin and his criminal history, a sixty-year sentence is not inappropriate.

The judgment of the trial court is affirmed.

ROBB, J., and RILEY, J., concur.